**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | | |
|---|---|---|
| KEVIS VAN NESS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 4:23-cv-129-CDL-AGH |
| | : | |
| BYRON HARBERT, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## ORDER AND RECOMMENDATION

Before the Court are the parties' cross motions for summary judgment (ECF Nos. 40, 46), and Plaintiff's motion to compel (ECF No. 39). For the following reasons, it is recommended that Defendant's motion for summary judgment be granted and Plaintiff's be denied. The Court denies Plaintiff's motion to compel.

## PROCEDURAL BACKGROUND

Plaintiff's claims arise from his pretrial detention at Muscogee County Jail ("MCJ"), where he contends he was assaulted by other detainees because of his sexual orientation. Compl. 1, 5, ECF No. 1; Am. Compl. 1, ECF No. 7-2. Plaintiff alleges that sometime in May 2023, Defendant Harbert, a correctional officer at MCJ, moved Plaintiff out of the "alternative lifestyles" dorm and into a new dorm. Am. Compl. 1. Plaintiff contends that inmates in that new dorm harassed him and called him names. *Id.* Plaintiff told his family about the incident and told them to notify MCJ that he was having problems and feared for his safety. *Id.* Plaintiff asserts that he was subsequently moved again, but he was still "assaulted" and "robbed" by other

inmates.  *Id.*  He claims he suffered a broken nose as a result of the assault.  *Id.*

Following its preliminary screening of both Plaintiff's original and amended complaints, the Court allowed Plaintiff's deliberate indifference to safety claim against Defendant to proceed for further factual development.  Order & R. 8, Oct. 4, 2023, ECF No. 8; Order, Dec. 14, 2023, ECF No. 15.  On May 13, 2024, Plaintiff moved for summary judgment (ECF No. 40) and to compel the production of discovery (ECF No. 39).  Defendant responded (ECF Nos. 43, 44) to Plaintiff's motions and, on August 29, 2024, moved for summary judgment (ECF No. 46).  Despite being notified of his rights and obligations to respond to the motion (ECF No. 47), Plaintiff failed to respond.  The parties' motions are ripe for review.

## DISCUSSION

## I.  **Defendant's Motion for Summary Judgment**

Defendant moves for summary judgment contending that Plaintiff failed to exhaust his administrative remedies and that Defendant is entitled to qualified immunity.  Def.'s Mem. in Supp. of Mot. for Summ. J. 2-8, ECF No. 46-1.  As explained below, Defendant's motion should be granted because Plaintiff failed to exhaust his administrative remedies, and alternatively, because Defendant is entitled to qualified immunity.

### A.  Summary Judgment Standard

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a genuine dispute of

material fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).   A fact is material if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.   A factual dispute is genuine if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.   *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted).   If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law.   *Id.* at 324-26.   This evidence must consist of more than conclusory allegations.   See *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).   In sum, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   *Celotex Corp.*, 477 U.S. at 322.

B.    Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). When a grievance procedure is provided for prisoners, "an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added). "To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process. If their initial grievance is denied, prisoners must then file a timely appeal." *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008) (internal citation and quotation marks omitted). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "The critical function of the grievance process is that it provides the institution with notice of a problem such that they have an opportunity to address the problem internally." *Toenniges v. Ga. Dep't of Corr.*, 600 F. App'x 645, 649 (11th Cir. 2015).

"[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process."[1] *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).

---

[1] "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a

"First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Id.* If, taking the plaintiff's facts as being true, the defendant is entitled to dismissal for failure to exhaust, then the complaint should be dismissed. *Id.* "If the complaint is not subject to dismissal at the first step . . . the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* The defendant bears the burden of proof during this second step. *Id.* In resolving the factual dispute, a court is authorized to make credibility determinations. *See Bryant*, 530 F.3d at 1377-78 (finding district court did not clearly err in determining plaintiff's allegation that he was denied access to grievance forms was not credible); *see also Whatley v. Smith*, 898 F.3d 1072, 1082-83 (11th Cir. 2018) (upholding district court's weighing of the evidence and credibility determination to find that one of the inmate's grievances was not filed). Further, since dismissal for failure to exhaust is not an adjudication on the merits, the court can resolve factual disputes using evidence from outside the pleadings. *Bryant*, 530 F.3d at 1376.

### 1. *MCJ Administrative Procedures*

MCJ's grievance procedures are set forth in the inmate handbook. Inmate Handbook at 12-57.[2] Under MCJ's grievance procedures, a grievance must be

---

summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (internal quotation marks omitted).

[2] Defendant submitted a declaration by Deputy Stephanie Culberson, the MCJ grievance investigator during the relevant time period. Culberson Decl. ¶¶ 2, 4, ECF No. 46-3. Culberson attached the Inmate Handbook to her declaration as Exhibit 2. Culberson Decl. Ex. 2, ECF No. 46-3. The Court refers to this exhibit as the "Inmate Handbook" and cites to the CM/ECF page number at the top of

submitted via the jail kiosk system within five days of an incident.  *Id.* at 37.   The grievance officer has fifteen days to provide a written response to the grievance.   *Id.* If the inmate disagrees with the response, he or she may appeal to the jail commander or designee.   *Id.*   If the inmate does not appeal, "it will be assumed that [the inmate] accept[s] the findings and the case will be closed."  *Id.*   The jail commander or designee has ten days to respond to an appeal.   *Id.* at 38.   Upon the jail commander or designee's response, "the department grievance system is terminated."   Inmate Handbook 38.

### 2.    *Findings of Fact and Resolution of Factual Disputes*

Plaintiff states that he presented his failure to protect allegations as a grievance, but "nothing was done" about the grievance.   Compl. 3.   He further claims he wrote "prison officials about his concerns" on four occasions—May 23, 2023, May 24, 2023, June 10, 2023, and June 21, 2023—but that he "never received a response" and was not given the option to appeal.   *Id.* at 4; *see also,* Pl. Decl. 1-2, ECF No. 31; Pl. Decl. ¶¶ 3, 7-8, ECF No. 34.   Defendant responds by attaching the three grievances filed by Defendant between April 2023 and the filing of the present case.   Culberson Decl. ¶ 4 & Ex. 1.   Those grievances were filed on April 23, 2023 (Grievance 31558858), May 15, 2023 (Grievance 31767600), and May 18, 2023 (Grievance 31798231).   Culberson Decl. Ex. 1 at 6-10.   But none of the grievances filed by Plaintiff address his failure to protect claim, and Plaintiff consequently failed to exhaust his administrative remedies.

---

each page.

The first grievance filed by Plaintiff (Grievance 31558858) was sustained by the grievance coordinator. *Id.* at 6. In that grievance, Plaintiff complained that items were missing from his cell. *Id.* He asked for the individuals associated with the theft to be prosecuted and asked to be reimbursed for the missing property. *Id.* The grievance coordinator sustained his grievance and explained that MCJ was investing the theft. Culberson Decl. Ex. 1 at 6. Plaintiff did not mention concerns regarding his safety or a failure to protect in this grievance.

Plaintiff similarly complained in his second grievance (Grievance 31767600) about the loss of his belongings. Culberson Decl. Ex. 1 at 7. Specifically, he stated that he was being harassed and manipulated by the individual who stole from him and that nothing was being done to recover his items. *Id.* The grievance coordinator found his grievance unsustained and explained to Plaintiff that he had been moved so he was no longer being harassed or manipulated. *Id.* Plaintiff appealed the grievance coordinator's decision on May 26, 2023. *Id.* at 8. In his appeal, Plaintiff stated that he "want[s] my property or my money" and "want[s] to see something done about" the theft. *Id.* The grievance supervisor responded to Plaintiff on May 31, 2023, and stated that MCJ is investigating his appeal. Culberson Decl. Ex. 1 at 8. Ultimately, Plaintiff's appeal was sustained on June 9, 2023, when the grievance supervisor told Plaintiff that charges had been brought against an inmate for the theft. *Id.* Plaintiff responded to the appeal on June 10, 2023 by stating:

> ok so what about my money or my property and why cant i be moved
> back to where i was removed from i dont feel safe here

*Id.* (lack of capitalization and punctuation in original).   MCJ did not respond to Plaintiff's post-appeal comment.   *Id.*

Finally, Plaintiff filed his third grievance complaining about the theft on May 18, 2023.   In that grievance (Grievance 31798231), he stated that it was unfair that he was "removed from [his] housing unit for someone else[']s actions towards [him]" and asked to be moved back to the alternative lifestyle dorm and for the theft to be prosecuted.   Culberson Decl. Ex. 1 at 9.   Although in this grievance Plaintiff did ask to be moved, he did not complain about his safety.   *Id.*   Instead, Plaintiff asked that the individual who stole from him be punished and that he be reimbursed for the theft.   *Id.*   The grievance coordinator informally resolved this grievance on May 23, 2023, by explaining that (1) the theft is still under investigation, and (2) Plaintiff was moved for his safety.   *Id.*   Plaintiff appealed that same day and stated that he did not need to be moved because he had not been in danger.   *Id.* at 10.   The grievance supervisor denied Plaintiff's appeal on May 24, 2023, as a non-grievable routine administrative transfer.   Culberson Decl. Ex. 1 at 10.   Again, in response to this final step in the grievance process, Plaintiff submitted the following remark on May 24, 2023:

> ok so you put me in danger by placeing me in a straight dorm and im gay now if something happens to me then wat

*Id.* (lack of punctuation and spelling errors in original).   MCJ did not respond to Plaintiff's post-appeal comment.

The Court finds, at the second step of the *Turner* analysis, that it is clear from a discussion of these grievances that Plaintiff did not grieve his failure to protect claims.   Plaintiff cites to statements made to officers on May 23, 2023, May 24, 2023, June 10, 2023, and June 21, 2023 to support his exhaustion.   Compl. 4.   The Court finds no statement or grievance in the record given to MCJ from Plaintiff on June 21, 2023.   Plaintiff's May 23, 24, and June 10 statements are located within grievances 31767600 and 31798231.   Culberson Decl. Ex. 1 at 8, 10.   The May 23 statement did not address a failure to protect or Plaintiff's concern for his safety; instead, Plaintiff claimed that he did not need to be relocated for his safety and asked to be returned to his old dorm.   *Id.* at 10.   Plaintiff's May 24 and June 10 responses to his appeals, however, did generally contain statements that expressed a fear for his safety or a desire to be moved for his safety.   *Id.* at 8, 10.   But these statements were submitted by Plaintiff after the resolution of his grievances that did not pertain to his safety. Culberson Decl. Ex. 1 at 7-10.

The MCJ grievance procedure provides that "the department grievance system is terminated[]" after an appeal response from the jail commander or his designee. Inmate Handbook 38.   Here, Plaintiff submitted general statements concerning his safety *after* he received responses to his grievance appeals—i.e., after the grievance process concluded.   These statements do not constitute new grievances and concern issues not previously raised in grievances 31767600 and 31798231.   As explained above, in order "[t]o exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process."   *Bryant*,

530 F.3d at 1378 (internal citation and quotation marks omitted).    Plaintiff did not

present these concerns regarding his safety to MCJ in an initial grievance or appeal

that grievance; he similarly did not submit a grievance after his assault in June 2023

complaining about the failure to ensure his safety.    He consequently did not exhaust

his administrative remedies on his failure to protect claim and Defendant's motion

should be granted.

     C.   Qualified Immunity

     Defendant contends that he is entitled to qualified immunity because Plaintiff

cannot show that he violated Plaintiff's constitutional rights.    Def.'s Mem. in Supp.

of Mot. for Summ. J. 4-6.    The Court agrees.    As explained below, it is alternatively

recommended that Defendant's motion for summary judgment be granted based on

Defendant's qualified immunity.

     *1.   Qualified Immunity Standard*

     Qualified immunity acts as a shield for government officials from liability for

acts committed during their discretionary duties, "unless their conduct violates a

clearly established statutory or constitutional right."    *Hadley v. Gutierrez*, 526 F.3d

1324, 1329 (11th Cir. 2008).    "The purpose of qualified immunity is to allow officials

to carry out discretionary duties without the chilling fear of personal liability or

harrassive litigation[.]"    *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir.

2009).    "In order to receive qualified immunity, an official must first establish that

'he was acting within the scope of his discretionary authority when the allegedly

wrongful acts occurred.'"    *Id.* (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir.

2002)).   Once the defendant shows he was acting within his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity does not apply. *Lee*, 284 F.3d at 1194; *Courson v. McMillian*, 939 F.2d 1479, 1488-89 (11th Cir. 1991).

It is undisputed in this case that Defendant was acting within the scope of his discretionary duties and pursuant to the performance of those duties in his interaction with Plaintiff.   *See Johnson v. Fee*, 838 F. App'x 394, 398 (11th Cir. 2020) (quoting *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017)) (finding prison officers were acting within the scope of their discretionary authority considering the "general nature" of their actions).   Thus, the burden shifts to Plaintiff to show Defendant is not entitled to qualified immunity.   To meet his burden, Plaintiff must establish "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."   *Wood v. Moss*, 572 U.S. 744, 757 (2014) (internal quotation marks and citation omitted); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009).[3]

As explained in more detail below, Plaintiff fails to establish that Defendant violated his Fourteenth Amendment rights.   Defendant is therefore entitled to qualified immunity and his motion for summary judgment should be granted.

### 2.    *Deliberate Indifference to Safety/Failure-to-Protect Standards*

The Eighth Amendment "impose[s] a duty on prison officials to 'take reasonable measures to guarantee the safety of the inmates.'"[4]   *Mosley v. Zachery*,

---

[3]   Courts should use their discretion in determining which prong of the qualified immunity inquiry to address first.   *Pearson*, 555 U.S. at 236; *McCullough*, 559 F.3d at 1205.

[4]   As a pretrial detainee, Plaintiff's § 1983 "claim is under the Fourteenth Amendment.   'Deliberate indifference claims made under the Fourteenth Amendment are held to the same standards as

966 F.3d 1265, 1270 (11th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). This "includes 'protect[ing] prisoners from violence at the hands of other prisoners.'" *Id.* (alteration in original) (quoting *Farmer*, 511 U.S. at 833). To establish a claim for deliberate indifference to safety, a prisoner "must show (1) a substantial risk of serious harm; (2) the [prison official's] deliberate indifference to that risk; and (3) causation." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (internal quotation marks omitted).

When examining the first element—a substantial risk of serious harm—courts use an objective standard. *See Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001) (en banc), *abrogated in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007). A plaintiff must "show conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." *Marbury*, 936 F.3d at 1233 (internal quotation marks omitted). "Plaintiffs can make this showing by demonstrating either a 'general threat' to inmates based on dangerous conditions in the prison or particular area of the prison, or by an individualized risk based on a 'specific threat' to the prisoner." *Spradlin v. Toby*, No. 5:23-cv-328 (MTT), 2024 WL 3881483, at *4 (M.D. Ga. Aug. 19, 2024) (quoting *Marbury*, 936 F.3d at 1233, 1235). To constitute a substantial risk of serious harm, there must be "a strong likelihood, rather than a mere possibility, of grievous injury." *Nelson v. Tompkins*, 89 F.4th 1289, 1296 (11th Cir. 2024) (internal quotation marks

_____

deliberate indifference claims made under the Eighth Amendment.'" *Nelson v. CorrectHealth Muscogee, LLC*, No. 4:20-CV-213 (CDL), 2024 WL 3558367, *1 n.1 (M.D. Ga. July 25, 2024) (quoting *Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1304-05 (11th Cir. 2023)).

omitted).

"To establish the second element—deliberate indifference—a plaintiff must [show] that the defendant: (1) 'was subjectively aware that the inmate was at risk of serious harm'; (2) 'disregarded that risk'; and (3) 'acted with subjective recklessness as used in the criminal law.'" *Spradlin*, 2024 WL 3881483, at *4 (quoting *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc)).   To satisfy the subjective awareness component, a plaintiff must show that the defendant was "both [] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [] also dr[ew] the inference."   *Marbury*, 936 F.3d at 1233 (internal quotation marks omitted).   Whether a risk has been disregarded is an objective inquiry, requiring a plaintiff to show that the defendant "responded to the known risk in an unreasonable manner, in that he . . . knew of ways to reduce the harm but knowingly or recklessly declined to act."   *Marbury*, 936 F.3d at 1233 (internal quotation marks omitted).   To "prove that the defendant acted with subjective recklessness as used in the criminal law," a "plaintiff must show that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm[.]"   *Wade*, 106 F.4th at 1255 (internal quotation marks omitted). However, even if a defendant knows of a risk but "respond[s] reasonably" to that risk, he "'cannot be found liable' under the Eighth Amendment[.]"   *Id.*

To establish the final element—causation—the "plaintiff must show a necessary causal link between the officer's failure to act reasonably and the plaintiff's injury."   *Marbury*, 936 F.3d at 1233 (internal quotation marks omitted).   "This

causal element requires proof that the officer (1) had the means substantially to improve the inmate's safety, (2) knew that the actions he undertook would be insufficient to provide the inmate with reasonable protection from violence, and (3) had other means available to him which he nevertheless disregarded." *Nelson*, 89 F.4th at 1298 (internal quotation marks omitted).

### 3.  Statement of Facts for Summary Judgment Purposes

Viewing the facts in the light most favorable to Plaintiff, the Court finds that in late April 2023, Plaintiff was told by an officer that he was being relocated from the alternative lifestyles dorm to dorm 4C because Plaintiff reported that he had been harassed by another inmate who had stolen Plaintiff's belongings.   Pl. Decl. 1-2, ECF No. 31; Def. Decl. ¶¶ 3-4, ECF No. 25-3.[5]   Captain Glenda Hall told Defendant to relocate Plaintiff.   Def. Decl. ¶ 4.   Upon arrival at dorm 4C, Plaintiff spoke to Defendant about his safety concerns as other inmates screamed slurs about Plaintiff's sexuality and said that Plaintiff came from the "sissy dorm[.]"   Pl. Decl. 2, ECF No. 31; Pl. Decl. ¶¶ 5-6, ECF No. 34.   Shortly after Plaintiff's move to dorm 4C, Defendant received a phone from Plaintiff's parents, who told Defendant that Plaintiff "was being bullied and picked on in dorm 4C[,]" after which Defendant spoke to Plaintiff.   Def. Decl. ¶ 5; Pl. Decl. ¶ 7, ECF No. 34.   Defendant then spoke with

---

[5]  The Court may consider the entire record when deciding motions for summary judgment.   Fed. R. Civ. P. 56(c)(3).   Here, the Court considered documents in the record but not attached to a motion for summary judgment or briefing in support.   First, the Court considered Defendant's declaration submitted in support of his motion to set aside the default (ECF No. 25-3), which Defendant cites in his statement of material facts.   *See* Def.'s Statement of Material Facts ¶ 1, ECF No. 46-2.   Second, the Court considered Plaintiff's sworn declarations received March 27, 2024 (ECF No. 31) and April 17, 2024 (ECF No. 34).

Classification, and Plaintiff was transferred to dorm 537.  Def. Decl. ¶ 5; Pl. Decl. ¶ 7, ECF No. 34.  Defendant Harbert states that he did not hear from Plaintiff or Plaintiff's family again until service of this action.  Def. Decl. ¶¶ 5-6.

Plaintiff, however, states that he thereafter repeatedly asked "jail officials" to be moved back to the alternative lifestyles unit because he felt unsafe in 537.  Pl. Decl. ¶¶ 7-8, ECF No. 34.  He further avers that after the sixth attempt to notify "officials" (presumably that he was unsafe), he was attacked and robbed.  *Id.* ¶ 8. He claimed that this attack resulted in a broken nose.  *Id.*  He also claims that he was the subject of defamation by Captain Hall because she claimed that he paid for an attack on another inmate.  *Id.* ¶ 10.  Finally, he states that this "slander" by Captain Hall and Defendant Harbert caused him to "no longer feel safe" in the MCJ. *Id.* ¶ 11.

### 4.    *Analysis*

Because Plaintiff fails to establish a violation of his constitutional rights, Defendant is entitled to qualified immunity.  As explained above, to establish a claim for deliberate indifference to safety, a prisoner "must show (1) a substantial risk of serious harm; (2) the [prison official's] deliberate indifference to that risk; and (3) causation."  *Marbury*, 936 F.3d at 1233 (internal quotation marks omitted). Plaintiff fails to establish any of the three elements required for a deliberate indifference to safety claim.

First, as it appears that Plaintiff is attempting to show a generalized risk to his safety, he "must show 'that serious inmate-on-inmate violence was the norm or

something close to it.'" *Marbury*, 936 F.3d at 1234.   The facts discussed above show that Plaintiff was the subject of verbal slurs based on his sexual orientation, that he was subsequently assaulted, and that he suffered a broken nose.   In *Marbury*, the Eleventh Circuit found that fifteen inmate-on-inmate stabbings over a period of six years was insufficient to show a generalized risk of harm.   *Id.*   Plaintiff presents no evidence to establish any pattern of inmate violence at MCJ.   As such, the Court finds that Plaintiff has not demonstrated an objectively serious risk of harm.

Second, Plaintiff fails to show that Defendant Harbert was subjectively aware of the risk to Plaintiff's safety in dorm 537.   Plaintiff alleges that Defendant Harbert escorted Plaintiff to dorm 4C and heard inmates "yelling out slurs[.]"   Pl. Decl. ¶ 5, ECF No. 34.   But Plaintiff explains he complained that he was unsafe in dorm 4C and was moved to dorm 537.   *Id.* ¶¶ 6-7.   Although Plaintiff avers he was harassed in dorm 537 and that he generally notified "jail officials" about the harassment, he does not allege that Defendant Harbert knew of that harassment or that Plaintiff informed Defendant Harbert that Plaintiff was unsafe.   *Id.* ¶¶ 6-8; *see also* Am. Compl. 1.

Defendant's testimony is mostly consistent with Plaintiff's allegations. Defendant states that he transferred Plaintiff from the alternative lifestyle dorm to dorm 4C.   Harbert Decl. ¶ 4.   Defendant then received a phone call from Plaintiff's family informing Defendant that Plaintiff had been "bullied and picked on in dorm 4C."   *Id.* ¶ 5.   Defendant responded to this information by consulting with MCJ classification and relocating Plaintiff to dorm 537.   *Id.*   Defendant states that that

16

interaction was "the last I heard of [Plaintiff]."    *Id.*

To establish deliberate indifference to safety, Plaintiff must demonstrate that Defendant "actually knew of a substantial risk" to Plaintiff's safety.    *Wade*, 106 F.4th at 1262.    At most, Plaintiff has shown that Defendant (1) was present when other inmates in dorm 4C subjected Plaintiff to verbal slurs and (2) received a call from Plaintiff's parents regarding bullying.    But each of these actions occurred before Defendant moved Plaintiff to dorm 537.    There is no evidence that Defendant Harbert had any subjective knowledge of any harm to Plaintiff in dorm 537.

Third, even assuming Defendant Harbert was aware of a substantial risk of harm to Plaintiff, Plaintiff fails to establish that Defendant Harbert (1) disregarded that risk or (2) was otherwise aware that his conduct put Plaintiff at substantial risk of harm.    The undisputed evidence in the case establishes that, instead of ignoring a risk of harm to Plaintiff, Defendant quickly responded when approached by Plaintiff's family regarding bullying in Plaintiff's dorm.    Defendant contacted MCJ classification and transferred Plaintiff to another dorm.    In other words, Defendant reasonably responded to any subjectively known risk to Plaintiff.

Finally, Plaintiff has not shown causation.    To establish causation, Plaintiff must show that there was a "necessary causal link" between Defendant Harbert's "failure to act reasonably" and Plaintiff's injuries.    *Marbury*, 936 F.3d at 1233.    As explained directly above, the Court finds that Defendant Harbert responded reasonably to the only risks subjectively known to him.    As a result, Plaintiff has not demonstrated that Defendant caused his alleged injuries.

In summary, Plaintiff has not demonstrated any of the elements of the deliberate indifference standard, and even if he did, Defendant responded reasonably to the risk of harm to Plaintiff.   As a result, Plaintiff has not shown a violation of his constitutional rights, and Defendant is entitled to qualified immunity.

## II.    Plaintiff's Motion for Summary Judgment

Plaintiff filed what he describes as a "motion for summary judgement [sic]." Pl.'s Mot. for Summ. J., ECF No. 40.   "Cross-motions [for summary judgment] must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law."   *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004).   Additionally, "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *Bricklayers, Masons and Plasterers Int'l Union of Am., Local Union No. 15, Orlando, Fla. v. Stuart Plastering Co., Inc.*, 512 F.2d 1017, 1023 (5th Cir. 1975).[6]   Again, the party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."   *Celotex Corp.*, 477 U.S. at 323.

---

[6]  In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

Plaintiff has not met his initial responsibility to inform the Court of the basis for his motion.   Plaintiff's motion only consists of "asking the judge to decide the case" without pointing to those portions of the record which demonstrate the absence of a genuine issue of material fact.   Because Plaintiff fails to provide any grounds for summary judgment in his favor, it is recommended that his motion be denied.

## III.   Plaintiff's Motion to Compel

With his motion for summary judgment, Plaintiff filed a motion to compel the production of discovery (ECF No. 39).   Defendant filed a timely response (ECF No. 43), arguing that Plaintiff's motion should be denied because he did not confer with counsel prior to filing his motion consistent with Local Rule 37, and in the alternative, that Plaintiff's grounds to compel are without merit.   For three reasons, the Court agrees with Defendant and Plaintiff's motion is denied.

First, Plaintiff failed to attach "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."   Fed. R. Civ. P. 37(a)(1); *see also* M.D. Ga. L.R. 37 ("Motions to compel disclosure or discovery will not be considered unless they contain a statement certifying that movant has in good faith conferred or attempted to confer with the opposing party in an effort to secure the information without court action.").   His motion to compel may be denied for this reason alone.

Second, Defendant shows that he responded to Plaintiff's discovery requests. Def.'s Resp. to Mot. to Compel 2-4, ECF No. 43.   Third, with the exception of

Plaintiff's request numbers 6 and 9, none of the requests are relevant to the claim in this case, which is that Defendant was deliberately indifferent to Plaintiff's safety when he moved him to a dorm where he was eventually attacked.   Plaintiff's request number 6 seeks any and all messages from Plaintiff to MCJ officials about his concerns for his safety.   Pl.'s Mot. to Compel 1, ECF No. 39.   Defendant responded to Plaintiff's request that he was not "privy to any messages [Plaintiff] may have sent to other" MCJ officials.   Def.'s Resp. to Mot. to Compel 2.   As for request number 9, which seeks medical records, Pl.'s Mot. to Compel 1, those records are available from the third-party contractor which provided medical services at MCJ.   Def.'s Resp. to Mot. to Compel 3.   The remainder of Plaintiff's requests seek discovery that is irrelevant to the claims in this case: numbers 4 and 8 seek discovery relating to an alleged assault that occurred in April 2023.   Pl.'s Mot. to Compel 1.   That assault, while discussed in the pleadings, is unrelated to the claims at issue here.   For these reasons, Plaintiff's motion to compel (ECF No. 39) is **DENIED**.

## CONCLUSION

For the reasons explained above, Plaintiff's motion to compel (ECF No. 39) is **DENIED**, and it is recommended that Defendant's motion for summary judgment (ECF No. 46) be **GRANTED** and Plaintiff's motion for summary judgment (ECF No. 40) be **DENIED**.   Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within FOURTEEN (14) DAYS after being served with a copy hereof. Any objection should be no longer than TWENTY (20) PAGES in length.   The district

judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED and RECOMMENDED**, this 30th day of January, 2025.

 s/ *Amelia G. Helmick*
UNITED STATES MAGISTRATE JUDGE